**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **Case No.: 1:18-cr-221** |
| **v.** | : | |
| **AHMAD 'UMAR AGHA,** | : | |
| **Defendant.** | : | |

**DEFENDANT'S AMENDED RESPONSE TO UNITED STATES' POSITION ON SENTENCING**

Defendant Ahmad 'Umar Agha, through counsel, respectfully submits this response to the United States' Position on Sentencing, filed October 22, 2026. ECF Dkt. No. 70.

The Government requests the Court sentence Mr. Agha to 146 months' imprisonment, a three-year term of supervised release, the mandatory $800 special assessment, and restitution in the amount of $6,885,000. Such restitution is unsubstantiated and the requested sentence would be vastly greater than similarly or worse situated defendants.

**A. The Restitution Requested by the Government is not Adequately Substantiated.**

Restitution, pursuant to the Mandatory Victim Restitution Act ("MVRA"), "must be based on sufficient evidence of the amount of actual loss incurred." *United States v. Harvey*, 532 F.3d 326, 339, 341 (4th Cir. 2008). The burden is on the government to prove actual loss by a preponderance of the evidence. *Id.* at 339. "Unlike loss under the Guidelines, the MVRA requires proof of actual loss and does not allow alternative metrics, such as gain." *United States v. Fair*, 699 F.3d 508, 516 (D.C. Cir. 2012) (quoting *United States v. Gallant*, 537 F.3d 1202, 1247 (10th Cir. 2008); *Harvey*, 532 F.3d at 341. However, in "in the event the actual-loss calculation is in fact too complex to permit a timely calculation of reasonable restitution, the MVRA envisions the

appropriate path for a district court is to hold additional proceedings or to decline to order restitution at all, not to issue an order unsupported by the evidence." *See Fair*, 699 F.3d at 516; 18 U.S.C. §§ 3663A(c)(3), 3664(d). "[A]bsolute precision[]" is not required, though the Government bears the burden of setting forth an adequate "basis for reasonable approximation." *United States v. Manlapaz*, 825 F. App'x 109, 118 (4th Cir. 2020).

The losses above $750,000.00 set forth by the government are entirely speculative and fall short of the required standard, which mandates "provable actual loss." *Harvey*, 532 F.3d at 340 (internal citation omitted). The evidence upon which the government relies includes an email with Company G and notes from interviews with Company G. *See* Government's Exhibits D-1, D-2, D-3. These are insufficient as evidence for a myriad of reasons. The language from the interview notes indicate that the loss numbers referenced therein, which estimated a loss of $30,000-40,000 per day for approximately six months, are merely "estimates" or "project[ions]". *See* Ex. D-1, D-2. Company G further cautioned, with respect to these estimates, that it "needs to review the information to obtain a more accurate analysis of lost revenue." *See* Ex. D-2. There are no exhibits that suggest such an analysis was ever performed.

The email from Company G further illuminates this issue. In it, Company G repeatedly expresses doubt over its memory of the losses. Company G expresses "it believes" its loss assessment was based on a "straight forward calculation," however it fails to provide details for such a calculation. Whatever details were provided in the email are not actual or provable. Company G repeatedly cautions that the email reflects solely what it can "recall" and further offers to search for actual documentation. The Government did not produce such documentation.

The evidence proffered by the Government also contradicts itself. Company G's email states that the attack affected four customers for roughly six months, while the notes from the

interview in 2013 state that two of the four affected customers were able to resume operations "quickly." *Compare* Ex. D-3 *with* Ex. D-1. The Government does not allot a certain amount of loss per day to any of the four customers, which makes it impossible to calculate the effect of this discrepancy, even if it is true that Company G lost $35,000 per day across four customers.

While the Government offers a simple calculation: $35,000 per day times 180 days, there is no evidence to substantiate the estimated loss per day and no evidence to substantiate the total number of days. Even assuming there was documentation to substantiate these rough estimates, as applied to four customers, such projections yield totals that differ in the millions. For example, if it were true that Company G lost $30,000 per day of revenue over four customers, and assuming each customer caused equal losses, at two customers a day for exactly 180 days, this would place the loss at 3.6 million dollars less than the amount requested by the Government. Assuming all the numbers asserted by the Government are true and supported by a modicum of evidence, this vast discrepancy demonstrates how far the Government has fallen from demonstrating from "provable actual" loss. It is apparent, from the evidence submitted by the Government, that an additional hearing is unlikely to result in an accurate restitution calculation, because Company G did not preserve such records. *See* Ex. D-3. Therefore, we respectfully submit that the MVRA requires that no restitution can be ordered beyond the $750,000 losses, to which the parties agree.

**B. The Sentence Sought by the Government Would Cause an Unwarranted Sentencing Disparity.**

As set forth in our sentencing memorandum, incorporated herein by reference, co-conspirator Peter Romar, was sentenced to time served, roughly 5 months, for similar conduct but less loss. Moreover, defendants who have committed similar or worse crimes, have been sentenced to far less than the Government requests. For example, the defendant in *United States v. Russell*,

Case No. 1:23-cr-195 (E.D. Va.), was sentenced to 24 months' incarceration, where the Government requested only 30 months, after a jury convicted him of violating 18 U.S.C. § 1519, Destruction and Alteration of Records, and 42 U.S.C. §§ 1320d-6(a)(2) & (b)(1), Obtaining Individually Identifiable Health Information, for leveraging his employment to illegally access a public figure's sensitive medical records and publishing it on the internet. In *United States v. Lane*, 4:25-cr-40015 (D. Mass) (MRG), the defendant, a college student who was around Mr. Agha's age at the time of his crimes, was sentenced to four years' incarceration, three years of supervised release, a fine of $25,000, restitution of $14,075,540.58 and forfeiture, for violating one count each of cyber extortion conspiracy, cyber extortion, unauthorized access to protected computers, and aggravated identity theft. In *United States v. Wagenius*, 25-cr-142 (W.D. Wash.), a former U.S. soldier who was a few years older than Mr. Agha at the time of the events at issue, was sentenced to 70 months' incarceration and ordered to pay $294,978.00 in restitution for conspiring to hack into telecommunications companies' databases, access sensitive records, and extorting the companies by threatening to release the stolen data unless ransoms were paid. The defendant in *Wagenius* was accused by the Government of abusing his position as a member of the military in committing his crimes. All of these defendants were U.S. citizens, who were not under the thumb of an oppressive regime overseas directing their actions. Further, individuals with prior felony convictions that have engaged in violent conduct have been sentenced below what the government is seeking for Mr. Agha. *United States v. Knight*, 25-cr-21 (D.D.C) (Sentenced to 120 months after pleading guilty to charges related to shooting two women in separate incidents and possessing firearms as a convicted felon); *United States v. Gause*, 23-cr-190 (D.D.C.) (Sentenced to 140 months after being convicted at trial of offenses related to her role as co-leader of a group that committed a string of robberies of pharmacies and cellphone stores).

As detailed in our Sentencing Memorandum, Mr. Agha's character and circumstances are significant and his actions distinguish him from these defendants.

**Conclusion**

For the foregoing reasons, Mr. Agha respectfully requests the Court decline to order $6.88 million dollars in restitution and sentence Mr. Agha to 24 months incarceration, as detailed in his Sentencing Memorandum.

*<u>/s/ Marc Eisenstein</u>*

Marc Eisenstein
Coburn & Eisenstein, PLLC
1200 G Street, NW
8th Floor
Washington, DC 20005
Phone: (703) 963-7164
Fax: (866) 561-9712

marc@coburngreenbaum.com
*Counsel to Defendant*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on October 28, 2026, a copy of the foregoing was filed with the Clerk of the Court and served on counsel of record.

Marc Eisenstein

Marc Eisenstein